ROBERT S. BROWN, State Bar No. 187845
**ROBERT STANFORD BROWN, APC**
714 W. Olympic Boulevard, Suite 450
Los Angeles, California 90015
Telephone: (213) 745-6300
Facsimile: (213) 261-3906
rstanfordbrown@gmail.com

Attorney for Plaintiff DENISE RAMORINO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE RAMORINO, | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| vs. | |
| COUNTY OF LOS ANGELES, a public entity, and DOES 1 through 10, Inclusive, | 1. Violation of 4th Amendment—Excessive Force (42 U.S.C. §1983); |
| Defendants. | 2. Violation of 4th Amendment—False Arrest (42 U.S.C. §1983); |
| | 3. Supervisory Liability (42 U.S.C. §1983); |
| | 4. Municipal Liability (42 U.S.C. §1983-Unconstitutional Custom or Policy |
| | 5. Municipal Liability (42 U.S.C. §1983-Ratification |
| | 6. Municipal Liability (42 U.S.C. §1983-Failure to Train |
| | **(DEMAND FOR JURY TRIAL)** |

# I.

## COMPLAINT

Plaintiff Denise Ramorino ("Plaintiff") brings this lawsuit pursuant to 42 U.S.C. §1983 to vindicate her rights to be free from unreasonable and unlawful seizures (false arrest and excessive force) by Los Angeles County Sheriff's Department (LACSD) deputies and/or supervisors acting under color of law.

## INTRODUCTION

1.      The Fourth and Fourteenth Amendments to the United States Constitution protects the rights of pretrial detainees against the use of excessive force and false arrest.

2.      In this case, Los Angeles County Sheriff's deputies tasked with preserving those rights instead used an unconstitutional arrest, excessive force and, ultimately, fabricated criminal charges against Plaintiff.

3.      In short, this case is about vindicating Plaintiff's constitutional rights.

## VENUE AND JURISDICTION

4.      This action is brought under 42 U.S.C. §§1983, and the Fourth and Fourteenth Amendments of the United States Constitution.  Jurisdiction is founded on 29 U.S.C. §§1331 and 1343(a)(1), (2), (3) and (4).  State claims are brought under pendant jurisdiction.

5.      Venue is proper in the Central District of California.  The facts and circumstances underlying all claims, as well as the injuries, took place within the geographic jurisdiction of this Court.

# II.

## PARTIES

6.      At all relevant times, Plaintiff DENISE RAMORINO ("Plaintiff") was a resident of Los Angeles County in California.

7.      Plaintiff is informed, believes and alleges that, at all relevant times, Defendant COUNTY OF LOS ANGELES ("the COUNTY"), is a chartered subdivision

of the State of California with the capacity to sue and be sued.  Defendant COUNTY OF LOS ANGELES is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ("LACSD"), and its agents and employees.  At all times relevant to the facts alleged, Defendant COUNTY OF LOS ANGELES was responsible for assuring that the actions, omissions, policies, procedures, and customs of the LACSD and its employees and agents complied with the laws of the Constitution of the United States and the State of California.

8.     Plaintiff is informed, believes and alleges that, Defendants sued as Does 1 through 10, inclusive, were and are supervisors, deputies, agents or employees of Defendant COUNTY OF LOS ANGELES and LACSD and were, at all relevant times, acting in the course and scope of their employment and agency.  Plaintiff alleges that each Defendant named as a "DOE" was in some manner responsible for the acts and omissions alleged.  At this time, Plaintiff is ignorant of the true names and capacities of the DOE Defendants, and upon discovery of the same, he will ask leave of this Court to amend this Complaint to alleges such facts, full names and responsibility when that information is ascertained.

9.     Defendants and DOES 1 through 10 were, at all relevant times, COUNTY OF LOS ANGELES and LACSD deputies, supervisors, and/or employees.  They were charged by law and were responsible for fairly enforcing and upholding the law to protect and serve members of the community;  the supervision of deputies and other employees under their command in the LACSD; for the supervision, training, discipline and corrective action(s) of persons, deputies, supervisors, agents, or employees working under their chain of command within said COUNTY and LACSD; for creating or promulgating LACSD policies; and, for investigating, monitoring and reporting the misconduct of their subordinates and/or fellow deputies.

10.     Plaintiff is informed, believes and alleges, that at all relevant times, Defendants DOES 1 through 10, inclusive, are, and at all relevant times, were supervisors, deputies, or employees of Defendant COUNTY OF LOS ANGELES and LACSD, and were acting within the course and scope of their employment and/or agency and under color of state law. Each of the Defendants and DOE Defendants caused and is responsible for the unlawful conduct in personally participating in the conduct or acting jointly and in concert with others who did so by authorizing, acquiescing, condoning, acting, omitting or failing to act to prevent the unlawful conduct and by promulgating or failing to promulgate policies and procedures. These actions or omissions resulted in unlawful conduct through the failure—with deliberate indifference to Plaintiff's rights—to initiate and maintain adequate supervision, training, or compliance with responsibilities and duties; failure to maintain proper and adequate policies, procedures and protocols; and by ratifying and condoning the unlawful conduct performed by deputies, supervisors, or employees under their direction and control.

11.     Plaintiff is informed, believes and alleges, that at all relevant times, Defendants, and each of them, were the agents, servants, joint venturers, partners, or employees, of each other Defendant, and as such, were acting within the course and scope of their agency, employment or joint venture. The respective principals subsequently ratified all acts, conduct or omissions and accepted the benefits of those ratifications.

12.     Plaintiff is informed, believes, and alleges, that each of the Defendants designated as a DOE is responsible, in some manner, for the events and happenings referred to, proximately causing the injuries and damages to Plaintiff as alleged.

13.     At all times mentioned, Defendant DOES 1 through 10, were acting under color of the laws, statutes, ordinances, regulations, customs, and usages of the United States Constitution, State of California and COUNTY OF LOS ANGELES pursuant to their official authority and their policies, procedures, practices, and/or customs

established by directives and/or other acts of the LACSD and Defendant COUNTY OF LOS ANGELES.

## III.

## FACTS COMMON TO ALL CAUSES OF ACTION

14.     On Saturday, January 9, 2021, at approximately 1:00 p.m., Plaintiff left with take-out from Chick-fil-A and was driving home along Magic Mountain Pkwy when she noticed a "Stop the Steal" sign located on the corner of Magic Mountain Pkwy and Valencia Blvd.  The sign was in front of Santa Clarita government buildings and the library.  The Los Angeles Sheriff's station was also in same area as the government buildings and library. There was no one near the "Stop the Steal" sign and there was no protest going on.

15.     Plaintiff parked her car in the library parking lot.  She wore gloves, a mask, and a face shield as she approached the sign.  She believed that the sign could lead to violence in Santa Clarita, especially after what happened with the insurrection at the Capital in Washington D.C., so she took the sign and walked to the LA County Sheriff's office to give it to them.

16.     Suddenly, a Caucasian man came from nowhere and started yelling profanities at Plaintiff and chasing her.  Plaintiff was afraid for her life, so she ran into the street to elude him.  An Asian woman attempted to assist her.

17.     Plaintiff was screaming for help, and she urinated in her pants out of fear. When the man caught up to her, he grabbed the sign from her.  Shortly thereafter, Los Angeles County Sheriff's Deputies arrived.  A deputy pulled up close to Plaintiff, handcuffed her and put her in his vehicle.  While looking out of the window, Plaintiff noticed that the Asian woman who tried to help her was also handcuffed and placed in a deputy's vehicle.

18.     The deputy who handcuffed Plaintiff and placed her in the vehicle asked her if she was a United States citizen.  She said that she was. He then questioned her

again about her legal status. The deputy reached into Plaintiff's pocket area where she had a pink container for her Driver's License and credit cards. He pulled out her Driver's License and closed the door.  He then did some typing in the front seat of the vehicle.

19.    While in the deputy's vehicle, Plaintiff asked the deputy several times why she was being arrested.  The deputy never responded, nor did he ever ask Plaintiff what had happened.  Plaintiff asked to speak to her lawyer and the deputy said that she could not.

20.    Plaintiff began having trouble breathing; she felt like she was suffocating. She told the deputy that she could not breathe, and he told her that if she was able to tell him that she could not breathe then she was ok.  Plaintiff could feel her chest tightening. Plaintiff tried to call her husband on her cell phone—which was in her back pocket— while handcuffed.  However, she was unable to make the call.  Plaintiff started to panic, and she pleaded with the deputy to call an ambulance because she was having difficulty breathing.  The deputy just ignored her.

21.    Subsequently, the deputy pulled into the Topper's parking lot.  In presence of 4-5 deputies, Plaintiff told him again that she could not breathe.   One of the deputies said he was a Lieutenant and he started recording her with a video recorder.  Plaintiff repeated that she could not breathe.  The deputy who handcuffed her, told her that she was under arrest.  He did not give her the Miranda rights.  Plaintiff was finally able to briefly call her husband/attorney and inform him that she had been arrested.

22.    The EMT and Fire Department arrived. An EMT (or someone from Fire Department) asked Plaintiff medical questions.  While Plaintiff was responding, the deputy who arrested her grabbed her handcuffs and pulled her out the door near the passenger side.  Plaintiff screamed in pain and the deputy stopped.  Plaintiff then put her back up against the seat.

23.    The EMT (or Fire Department employee) then put Plaintiff on a gurney and into the ambulance.  Plaintiff was taken to Henry Mayo Hospital Emergency Room.

While in the ambulance, Plaintiff asked to speak to her attorney and was refused. Plaintiff also asked what she was arrested for and received no response to her question.

24.     While at Henry Mayo Emergency Room, Plaintiff's left wrist was handcuffed tightly to the hospital bed such that she was experiencing extreme pain in her wrist.  There were 3 deputies who were in hospital room where they could see Plaintiff. She asked the deputies multiple times to please loosen the handcuffs because they were causing her pain. They refused her requests.  Plaintiff mentioned to the ER doctor, in substance, that she was in pain because of the handcuffs.  Plaintiff is informed and believes that the doctor noted it in his medical report.  Plaintiff also repeatedly asked the deputies why she was arrested, and they just ignored her.

25.     Later, a deputy supervisor took some of Plaintiff's property.  Plaintiff asked him why she had been arrested.  The deputy supervisor responded that it was a citizen's arrest and that she was arrested for misdemeanor vandalism.  He said that he was going to take Plaintiff's property and give her a receipt.  He also told her that once she was released from the hospital and sent to the Santa Clarita Station that she would be released without any bail because it was just a misdemeanor and because of the COVID-19 virus, they weren't holding people for misdemeanors.

26.     Later, Plaintiff asked the nurse if she could go to the restroom and take off her wet underwear and pants.  The nurse asked the deputies to take Plaintiff to the restroom and the nurse provided Plaintiff with hospital pants.  The deputies were given Plaintiff's wet underwear and pants. The deputies were making fun of Plaintiff for having urinated in her pants.  They told her that she was a baby and for her to grow up and stop acting like a child.  They also told her that she was faking the panic attack.

27.     The doctor gave Plaintiff a shot for her back pain.  As she was leaving the hospital, two deputies escorted her.  One of the deputies grabbed her left upper arm and was yanking her forward.  Plaintiff cried out in pain.  Plaintiff told him that her back was

COMPLAINT FOR DAMAGES

hurting and that the doctor just gave her something for her back pain. The other deputy told him to stop grabbing her. T deputies then took Plaintiff to Santa Clarita station.

28. While at the Santa Clarita Station, Plaintiff was placed in a holding cell. Plaintiff asked various deputies that would walk past the cell if she could call her attorney. Some of the deputies said no and some just ignored her. Plaintiff asked when she would be released and was ignored. At some point, the deputy at the desk told Plaintiff that she would not be released and that she was being charged with felony robbery.

29. Plaintiff asked multiple deputies to speak to her attorney. She was either refused or ignored. The same occurred when she asked for something to eat. Plaintiff also asked multiple times for her medications for her medical conditions (i.e., diabetes, PTSD and depression). Once again, the deputies refused or ignored her. During this time, a deputy asked Plaintiff if she was a U.S. citizen. Plaintiff told him that she was. He asked her if she was sure because, if not, she would be released to United States Immigration and Customs Enforcement (ICE). He then laughed.

30. At the Santa Clarita Station, Plaintiff was finally offered some food but it was meat and she is not a vegetarian so she could not eat it. A deputy finally put through a phone call from her attorney on the speaker from the cell so all the deputies could hear the call.

31. At the Santa Clarita Station, Plaintiff felt weak and dizzy. She fell to the floor and hit her head. She was unconscious. She awoke with the paramedics (maybe fire department?) speaking to her. The paramedics (or fire department?) said that they were going to take her to the hospital. Plaintiff heard a deputy say that she should not go to the hospital because they were getting ready to release her and that if she went to the hospital it would take a lot longer. The ambulance had an electronic form ready for her to sign even before Plaintiff decided if she wanted to go to the hospital. Plaintiff was

told that she had to sign it so that she could be released.  Plaintiff was so desperate to be released that she signed the document.  However, after signing it, she was not released.

32.     On January 10, 2021, in the early morning hours, Plaintiff had a severe panic attack.  Plaintiff was taken to the hospital, but multiple deputies and fire department personnel berated her and accused her of faking a panic attack.  The deputies told her that she was just a criminal making up a medical problem.  Plaintiff was handcuffed to the gurney.  Plaintiff complained that the handcuffs were too tight, and she asked to have them loosened.  The deputies ignored her.

33.  While at the Emergency Room, Plaintiff was transferred from the gurney to a hospital bed where her left wrist was handcuffed.  Once again, the handcuffs were too tight.  Plaintiff asked the (female) deputy to please loosen them but she just ignored Plaintiff.

34.     After being released from the hospital, Plaintiff was taken back to Santa Clarita station.  At Santa Clarita station, Plaintiff was kept in the deputy's vehicle.  One of the transporting deputies went inside the station.  The male deputy told Plaintiff that the other deputy was getting Plaintiff's stuff because she was going to be transported to another place.  He then asked if Plaintiff spoke Spanish.  When Plaintiff asked where she was being taken, the deputy did not respond.

35.     Plaintiff was transported to Century Regional Detention Facility ("Century") in Lynwood, California.  While at Century, Plaintiff was issued a bra, a yellow inmate shirt, yellow inmate pants, and underwear.  She was put in a wheelchair because she could not walk due to severe back pain.  Plaintiff believes that she was taken to the medical unit or section, and they gathered information from her.  Plaintiff was asked a series of questions.  While Plaintiff was being questioned, a deputy was present.

36.     After the interview, the deputy told Plaintiff that she should not be there.  He said that the report was "bogus" and that the charges were "bogus charges."  He said

the report was written as if the man was afraid of Plaintiff and that she had attacked him.  He told Plaintiff that the DA probably wouldn't even file charges against her.  The deputy gave Plaintiff an extra blanket and some food.  Plaintiff was also given some pain medication.

37.    Plaintiff was allowed to speak with her husband (also her attorney) on speakerphone.  Plaintiff 's husband/attorney was given information as to where she was located and about bail for her.  Plaintiff was told that she was not going to be placed in general population but that she was going to be kept where she was.

38.    After the shift change in the early morning, Plaintiff was taken from that area and placed into general population.  While in general population, she pressed the buzzer in her cell to ask to call her attorney.  The deputy responded that Plaintiff was there for a reason and not to ask him dumb questions anymore because she would be in trouble. Plaintiff was not given any food or medication after the shift change.

39.    Before Plaintiff was released from Century, a deputy asked her if she was a citizen.  Plaintiff's left wrist was handcuffed to a chair while she was waiting for the deputies to do the paperwork to release her.  At this point, Plaintiff no longer asked to have the handcuffs loosened because of the many times that she was ignored previously and because she was exhausted.  The deputy pushed the wheelchair Plaintiff was in, and as it pulled forward, Plaintiff screamed because her left wrist was still handcuffed to the chair.  The deputy then uncuffed Plaintiff's left wrist and then wheeled her out to change clothes for her release.

40.    Plaintiff was released from Century Regional Detention Facility on January 10, 2021, at about 8:30 p.m.  She was released without any shoes and was given a thin, dark blue pant pullup zippered suit.  Plaintiff is informed and believes that the Santa Clarita deputies had her shoes, underwear, and pants in their possession.

41.    Plaintiff was supposed to have a court date on February 9, 2021, but the Los Angeles District Attorney's Office declined to file criminal charges against her.

# IV.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF FOURTH AMENDMENT RIGHTS (42 U.S.C. §1983)—FALSE ARREST

### [As against DOES 1-10]

42.     Plaintiff re-alleges and incorporates all of the allegations contained in paragraphs 1-41.

43.     This action is brought pursuant to 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments of the United States Constitution.

44.     At all relevant times, Plaintiff possessed the right, guaranteed by the Fourth Amendment of the United States Constitution to be free from unreasonable and unlawful seizures by police officers or supervisors acting under color of law.  As described in Section III above, Defendants violated Plaintiff's' Fourth Amendment rights by unlawfully arresting her without probable cause.

45.     Plaintiff is informed and believes that in support of Plaintiff's unlawful arrest, Defendants falsified and fabricated incident and arrest reports.

46.     In doing so, these Defendants acted specifically with the intent to deprive Plaintiff of her constitutional rights under the Fourth Amendment to be free from unreasonable and unlawful seizures.

47.     These Defendants subjected Plaintiff to the stated deprivations by actual malice, deliberate indifference or a reckless disregard of her rights under the United States Constitution.

48.     As a direct and proximate result of the actions of these Defendants, Plaintiff suffered the violation of her constitutional rights.  As a result of the actions or omissions of these Defendants, Plaintiff suffered physical, mental and emotional injuries, which are ongoing.

49.     Defendants acted recklessly, with deliberate indifference to Plaintiff's constitutional rights and should have punitive damages assessed against them.  The acts of these Defendants were willful, wanton, malicious and oppressive justifying the award of exemplary and punitive damages.

50.     By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs, according to proof.

## V.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF FOURTH AMENDMENT RIGHTS (42 U.S.C. §1983— EXCESSIVE FORCE

### [As against Defendants DOES 1-10]

51.     Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1-50 above and incorporates same by reference as though set forth fully in this Complaint.

52.     This claim is brought under Title 42 U.S.C. § 1983, and on the Fourth and Fourteenth Amendment of the United States Constitution and pursuant to the general laws of the State of California.  Plaintiff alleges each of these Defendants used excessive force against her, deprived her of her constitutional rights and caused her to suffer grievous harm and physical, mental, and emotional injuries.

53.     As set forth above, Plaintiff was subjected to deprivation of rights by Defendants, which rights included, but are not limited to, privileges and immunities secured to Plaintiff by the Constitution and the laws of the United States.  Specifically, these Defendants have violated Plaintiff's constitutional right to be free from excessive force by tightly handcuffing her such that she experienced extreme pain and discomfort. Defendant also failed to loosen Plaintiff's handcuffs after she expressed that she was experiencing pain and discomfort due to the tightness of the handcuffs.  Plaintiff is

informed and believes that Plaintiff's requests to loosen the handcuffs have been omitted from the reports that were generated incident to her arrest and confinement.

54.     As a direct and proximate result of the actions of these Defendants, Plaintiff suffered the violation of her constitutional rights.  As a result of the actions or omissions of these individual Defendants, Plaintiff suffered physical, mental and emotional injuries, which are ongoing.

55.     Defendants acted recklessly, with deliberate indifference to Plaintiff's constitutional rights and should have punitive damages assessed against them.  The acts of these Defendants were willful, wanton, malicious and oppressive justifying the award of exemplary and punitive damages.

56.     By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs, according to proof.

## VI.

## THIRD CLAIM FOR RELIEF

## SUPERVISORY LIABILITY  (42 U.S.C. § 1983)

### [As against Defendant DOES 1-10]

57.     Plaintiff re-alleges and incorporates all of the allegations contained in paragraphs 1-56.

58.     At all relevant times, Defendants had the duty to train, instruct, supervise and discipline LACSD deputies, to insure that they respected and did not violate federal constitutional and statutory rights of citizens and to objectively investigate violations of community members' rights, including the right to be free from unlawful seizure (arrest) and to be free from excessive force.

59.     Defendants breached these duties by participating in, condoning and ratifying Plaintiff's false arrest and the use of excessive force against her.  Defendants

directed, encouraged, and acquiesced in the unlawful seizure of Plaintiff and the use of excessive force against her in violation of the 4th and 14th Amendments.

60.    Defendants acted with deliberate indifference to the rights of Plaintiff by showing conscious disregard for her liberty and her safety.   Thus, Defendants have violated Plaintiff's constitutional rights and proximately caused the damages set forth in the incorporated paragraphs, all in violation of 42 U.S.C. § 1983.

61.    As a direct and proximate result of the actions of these Defendants, Plaintiff suffered the violation of her constitutional rights.  As a result of the actions or omissions of these Defendants, Plaintiff suffered physical, mental and emotional injuries, which are ongoing.

62.    Defendants acted recklessly, with deliberate indifference to Plaintiff's constitutional rights and should have punitive damages assessed against them.  The acts of these Defendants were willful, wanton, malicious and oppressive justifying the award of exemplary and punitive damages.

63.    By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs, according to proof.

## VII.

## FOURTH CLAIM FOR RELIEF

## MUNICIPAL LIABILITY-UNCONSTITUTIONAL CUSTOM OR POLICY

### (42 U.S.C. § 1983)

### (As Against Defendants County of Los Angeles and DOE Supervisors 1-10)

64.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 63.

65.  On and before January 9, 2021, Defendants COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-10 deprived Plaintiff of the rights and liberties secured to her by the Fourth and Fourteenth Amendments to the United States Constitution, in that said Defendants and their supervising, and managerial employees, agents, and

representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, of Plaintiff, and of persons in her class, situation and comparable position in particular, knowingly maintained, enforced and applied an official policy or practice or custom recognized by the COUNTY OF LOS ANGELES and the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT.

66.  DOES 1-10 acted under color of law.

67.  DOES 1-10 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY OF LOS ANGELES.

68.  On information or belief, individual Defendants and DOES 1-10 were not disciplined, reprimanded, retrained, suspended or otherwise penalized in connection with the violation of Plaintiff's constitutional rights.

69.  Defendants COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-10 together with other COUNTY OF LOS ANGELES policymakers and supervisors maintained the following unconstitutional customs, practices, and policies:

a.  Using or allowing the use of excessive force;

b.  Providing inadequate training regarding the use of physical force;

c.  Unreasonably and wrongfully detaining and/or arresting citizens or allowing the same;

d.  Employing and retaining as deputies and other personnel, including DOES 1-10, who Defendants COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-10, at all relevant times, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written Los Angeles County Sheriff's Department policies regarding the use of force and for lawfully arresting member of the community;

e.  Inadequately supervising, training, controlling, assigning, and disciplining Los Angeles County Sheriff's Department deputies and other personnel,

including DOES 1-10, who Defendants COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-10 each knew, or in the exercise of reasonable care, should have known DOES 1-10 had dangerous propensities and character traits.

f.  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling the intentional misconduct by DOES 1-10.

g.  Failing to adequately discipline DOES 1-10, for the above-referenced categories of misconduct, including "slap on the wrist" discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

h.  Encouraging, accommodating, or facilitating a "code of silence" in which deputies do not report other deputies' errors, misconduct or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the deputy questioned will claim ignorance of the other deputy's wrongdoing;

i.  Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of incidents of excessive force or false arrest, including by failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in using excessive force or falsely arresting members of the community;

j.  Refusing to discipline, terminate or retrain the deputies in using force or making legal arrests, even where incidents of excessive force or false arrests were determined to be unconstitutional;

k.  Having and maintaining an unconstitutional custom and practice of using excessive force, making false arrests and covering up deputy misconduct.  These customs and practices by COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-

16

10 were condoned by Defendants in deliberate indifference to the safety and rights of its community members, including Plaintiff.

70.  By reason of the stated policies, customs and practices of Defendants COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-10, Plaintiff experienced physical, mental and emotional pain and suffering, for which she is entitled to recover damages.

71.  Defendants COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-10 together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above, Defendants condoned, tolerated and, through actions and omissions, ratified such policies.  Defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and the constitutional rights of Plaintiff, and other individuals similarly situated.

72.  By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-10, acted with intentional, reckless, and callous disregard for the well-being of Plaintiff and her constitutional rights.  Defendants COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-10, and each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

73.  Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Defendants COUNTY OF LOS ANGELES and DOE SUPERVISORS 1-10, were affirmatively linked to, and were significantly influential forces behind Plaintiff's injuries.

74.   As a direct and proximate result of the actions of these Defendants, Plaintiff suffered the violation of her constitutional rights.  As a result of the actions or omissions

of these Defendants, Plaintiff suffered physical, mental and emotional injuries, which are ongoing.

75. By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs, according to proof.

## VIII.

## FIFTH CLAIM FOR RELIEF

## MUNICIPAL LIABILITY-RATIFICATION

## (42 U.S.C. § 1983)

**(As Against Defendants County of Los Angeles and DOE Supervisors 1-10)**

76. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 75.

77. DOES 1-10 acted under color of state law.

78. The acts of Defendants deprived Plaintiff of her rights under the United States Constitution.

79. Upon and information and belief, the final policymaker, acting under color of law, has a history of ratifying uses of excessive force and false arrests.

80. Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority ratified the individual defendants' acts and basis for them. Upon information and belief, the final policymaker knew and specifically approved of the acts of DOES 1-10.

81. Upon information and belief a policymaker has determined (or will determine) that the acts of DOES 1-10 were "within policy."

82. Accordingly, Defendants are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

83. As a direct and proximate result of the actions of these Defendants, Plaintiff suffered the violation of her constitutional rights. As a result of the actions or omissions

18

of these Defendants, Plaintiff suffered physical, mental and emotional injuries, which are ongoing.

84.  By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs, according to proof.

## IX.

## SIXTH CLAIM FOR RELIEF

## MUNICIPAL LIABILITY-FAILURE TO TRAIN

### (42 U.S.C. § 1983)

### (As Against Defendant County of Los Angeles and DOE Supervisors 1-10)

85.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 84.

86.  DOES 1-10 acted under color of state law.

87.  The acts of Defendants deprived Plaintiff of her rights under the United States Constitution.

88.  On information and belief, Defendants failed to properly and adequately train DOES 1-10, including but not limited to, with regard to the use of physical force and making legal arrests.

89.  The training policies of Defendant COUNTY OF LOS ANGELES were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including the use of physical force and making legal arrests.

90.  Defendant COUNTY OF LOS ANGELES was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

91.  The failure of Defendant COUNTY OF LOS ANGELES to provide adequate training caused the deprivation of Plaintiff's rights by DOES 1-10; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

92.  As a direct and proximate result of the actions of these Defendants, Plaintiff suffered the violation of her constitutional rights.  As a result of the actions or omissions of these Defendants, Plaintiff suffered physical, mental and emotional injuries, which are ongoing.

93.  By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs, according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment against all Defendants, including DOES 1 through 10, inclusive, as follows:

1.    For an award of general and special damages according to proof;

2.    For punitive damages against DOES 1-10 in their individual capacities according to proof (as to only the first, second, and third claims);

3.    For attorney's fees according to proof;

4.    For costs of suit incurred; and

5.    For such other and further relief as the Court deems just and proper.


Dated:  January 6, 2023                                    ROBERT STANFORD BROWN, APC


                                                                          By:       /S/ Robert S. Brown
                                                                          _____
                                                                          Robert S. Brown, Esq.
                                                                          Attorney for DENISE RAMORINO

## **DEMAND FOR JURY TRIAL**

Plaintiff DENISE RAMORINO requests that this action be determined by trial by jury.


Dated:  January 6, 2023                                     ROBERT STANFORD BROWN, APC


By:         /S/ Robert S. Brown

_____
Robert S. Brown, Esq.
Attorney for DENISE RAMORINO